IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United States of America<br><br>v.<br><br>Quinae Shamyra Stephens,<br><br>                            Defendant. | C/A No. 4:21-cr-651-SAL<br><br>**OPINION AND ORDER** |

This matter comes before the court pursuant to a motion for compassionate release filed by Defendant Quinae Shamyra Stephens. [ECF No. 188.] The government opposes the motion. [ECF No. 192.] The motion is ripe for this court's review. After carefully analyzing the arguments raised by the parties in accordance with the relevant facts and law, the court denies Defendant's motion for the reasons below.

## RELEVANT BACKGROUND

On April 7, 2022, a jury found Defendant guilty of conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); identity theft in violation of 18 U.S.C. § 1028(a)(3) and (b)(2) (Count 2); aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and 2 (Count 3); access device fraud in violation of 18 U.S.C. § 1029(a)(4) and 2 (Count 4); interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312 and 2 (Count 5); and felon in possession of a firearm or ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count 6). [ECF Nos. 98, 152.] On August 2, 2022, the court sentenced Defendant to a total of 224 months' imprisonment and a five-year term of supervised release. *See* ECF Nos. 181, 182.

1

On April 24, 2022, Defendant filed a pro se motion for compassionate release, which the Government opposes. [ECF Nos. 188, 192.] This motion is ripe for review.

## STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release, as amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), which states that upon motion of either the Director of the Bureau of Prisons ("BOP") or a criminal defendant, a court may modify the defendant's sentence if "extraordinary and compelling reasons warrant such a reduction," the "reduction is consistent with applicable policy statements issued by the Sentencing Commission," and the 18 U.S.C. § 3553(a) sentencing factors merit a reduction. 18 U.S.C. § 3582(c)(1)(A).

If a court finds extraordinary and compelling reasons, "it must consider the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High,* 997 F.3d 181, 1864 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Section 3553(a) directs courts to "impose a sentence sufficient, but not greater than necessary," and to make the following considerations in imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
　(B) to afford adequate deterrence to criminal conduct;
　(C) to protect the public from further crimes of the defendant; and
　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for—

  (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

  . . . .

(5)  any pertinent policy statement—

  . . . .

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## DISCUSSION

Defendant bases her request for compassionate release on an alleged high risk of becoming seriously ill from COVID-19. [ECF No. 188 at 5–6.] Defendant indicates to the court that, prior to her arrest, she was a heavy tobacco smoker, and she also has hypertension and asthma. *Id.* at 6. She asks that the court find her health and increased risk of severe illness from COVID-19 an "extraordinary and compelling" reason for a sentence reduction. *Id.* at 5–7. Defendant further asserts that the facility where she is currently incarcerated, Tallahassee FCI, is dangerous, unsanitary, and "a breeding ground for COVID infections." *Id.* at 12.

Defendant further argues that the disparate sentences between herself and her co-defendant and son serve as a further "extraordinary and compelling" reason for her compassionate release. Additionally, she asserts that her § 3553(a) factors warrant a reduction in sentence, particularly in that she claims there is a sentencing disparity between herself and her co-defendant; that she has a strong, safe, and secure plan for her release; and that she is not a danger to the community based on her efforts at rehabilitation. *Id.* at 13–17.

The Government disagrees that compassionate release is appropriate or warranted. [ECF No. 192.] First, the government argues Defendant's reasons for compassionate release are not extraordinary and compelling. *Id.* at 4–9. Second, the government argues Defendant's § 3553(a) factors strongly weigh against a sentence reduction. *Id.* at 9–10.

The court addresses the merits of Defendant's motion below.[1]

## I. Defendant's Concerns Over COVID-19

Defendant argues her case presents an extraordinary and compelling reason for compassionate release based on her unique circumstances—her status as a previous heavy smoker, combined with her hypertension and asthma—and possible contact with COVID-19.

According to the Fourth Circuit,

> To establish that the risk posed by COVID-19 presents an "extraordinary and compelling reason" for release, a defendant must allege "that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [her] preexisting medical condition increases [her] risk of experiencing a serious, or even fatal, case of COVID-19."

*United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (quoting *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)). The Fourth Circuit describes the inquiry a court must conduct as "'multifaceted'" and one that "'must account for the totality of the relevant circumstances.'" *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, (4th Cir. 2022) (internal quotations omitted)). But "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [the disease] *and* a particularized risk of contracting the disease at his prison facility. *United States v. Hargrove*, 30 F.4th 189, 196 (4th Cir.

---

[1] There do not appear to be any exhaustion issues here. Defendant asserts she has satisfied the exhaustion requirement, ECF No. 188 at 1–2, and the government does not argue otherwise.

4

2022) (emphasis added) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

According to her motion, Defendant's COVID-19 concerns are related to her history as a heavy smoker, her hypertension, and her asthma. *See* ECF No. 188 at 5–7. In response, the Government explains that the COVID-19 pandemic poses a general threat to every non-immune person in the country, but Defendant has not demonstrated that she is at any greater risk for COVID-19. [ECF No. 192 at 4–5.] Former smoking, moderate to severe asthma, and hypertension are all listed by the Centers for Disease Control and Prevention ("CDC") as medical conditions that can make people more likely to get very sick from COVID-19. *See id.* at 5 (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). Nevertheless, the Government notes that Defendant has offered no documentation to support her claim that she has asthma and hypertension. *Id.* at n.1. But, even assuming she has these conditions, the Government argues Defendant's case does not present an "extraordinary and compelling" reason where Defendant was offered a vaccine and declined it. *Id.* at 5–8.

Having considered the information presented by the parties, the court finds there are factors that weigh against finding the Defendant has a particularized susceptibility to COVID-19. For example, because Defendant has not submitted any medical records along with her motion, she has not proven that she has been diagnosed with asthma and hypertension, nor has she demonstrated how severe those conditions are for her. *Cf. United States v. Weaver*, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (doubting whether a prisoner has a particularized susceptibility to COVID-19 where the prisoner failed to put forth evidence that his asthma could be classified as moderate-to-severe). The lack of evidence to support Defendant's alleged

5

diagnoses weighs against her argument that she has an individual susceptibility to COVID-19 based on her medical conditions.

The Government also places great emphasis on the fact that Defendant has declined to be vaccinated, noting "[a]vailable vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus." [ECF No. 192 at 5.] Defendant admits as much but offers that she "declined the COVID-19 vaccine due to her religious beliefs." [ECF No. 188 at 11.] Notably, federal courts have found that the availability of a vaccine mitigates the threat of COVID-19 generally. *See United States v. Reed*, No. 18-CR-0078, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit."); *see also United States v. Butler*, No. 17-cr-468-RBH, ECF No. 165 (D.S.C. Apr. 29, 2021) ("The combination of vaccinated inmates and staff, plus those who have recovered from a prior COVID-19 infection, mitigates the risk of community spread of the virus and reduces the risk to Defendant . . . ."). And there are instances where the fact that a prisoner declined a vaccine has been found to mitigate his particularized susceptibility to COVID-19. *See United States v. Brown*, 78 F.4th at 129 (finding district court did not abuse its discretion in finding prisoner's refusal of vaccine mitigated his particularized susceptibility when the reason for the refusal was questions about the vaccine's efficacy). On the other hand, the Fourth Circuit has cautioned that this inquiry must be particularized. *See id.* ("We agree that district courts should always consider a defendant's 'individual circumstances' when assessing compassionate release claims, even when the defendant seeks relief on COVID-19 grounds and has refused to be vaccinated."). Here, the court will accept that Defendant declined the COVID-19 vaccine based on unspecified religious beliefs. And the court will not hold that fact against Defendant, but the court also finds her unvaccinated status

does not weigh in favor of a finding that there are "extraordinary and compelling" circumstances for compassionate release. *See United States v. Anderson*, No. 22-10007, 2022 WL 2828783, at *1 (9th Cir. July 20, 2022) ("The record does not support Anderson's claim that the district court effectively required Anderson to disobey his religious beliefs in exchange for compassionate release. Rather, the court merely explained that, although Anderson was entitled to refuse the vaccine, it would not treat his unvaccinated status as favoring compassionate release."); *United States v. Anderson*, Case No. 2:16-cr-00305-KJD-VCF, 2021 WL 5985134, at *2 (D. Nev. Dec. 16, 2021) ("Anderson is choosing not to [be vaccinated], and he is free to make that decision. However, refusing vaccination because of religious belief does not weigh in favor of compassionate release.").

Nor has Defendant demonstrated a particularized risk of contracting COVID-19 at FCI Tallahassee, where she is now incarcerated. Defendant asserts that, at her facility, "[i]nmates are unable to socially distance themselves, lack consistent access to PPE and cleaning supplies, and must tolerate prisoners and guards who do not consistently wear masks." [ECF No. 188 at 8.] Defendant further cites alleged mishandling of the COVID-19 pandemic within the BOP and notes that the director of the BOP resigned in January 2021, in part, due to that. *Id.* Defendant relies upon an article from December 2022, discussing a rise in COVID-19 levels in America at that time and explaining that communities were facing a "tripledemic" of the flu, RSV, and COVID-19. *Id.* at 8–9 (citing Alex Caprariello & Taylor Delandro, *CDC Urges Masking Return as Tripledemic Surges*, Changing America (Dec. 12, 2022), https://thehill.com/changing-america/well-being/prevention-cures/3771708-cdc-urges-masking-return-as-tripledemic-surges/). The court is unconvinced by Defendant's position. First, the problems with the BOP cited by Defendant occurred before she was sentenced and incarcerated with the BOP. Second, as to the "tripledemic"

7

in America, that article does not establish any sort of increased risk where Defendant is incarcerated, as opposed to in the community at-large. And finally, even if the court were concerned by Defendant's claims about the lack of social distancing and masking at her facility, according to currently available statistics, at FCI Tallahassee, there is currently a total of one open case of COVID-19 amongst an inmate population of 900, of which 400 inmates are fully innoculated. Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed Apr. 8, 2024). Notably, the number of COVID-related deaths is two, a number that has not changed in the last year. *Id.*; s*ee also* ECF No. 188 at 8. For these reasons, the court cannot find that there is any particularized risk at Defendant's imprisonment facility.

As explained above, Plaintiff has failed to show she has a particularized susceptibility to COVID-19 combined with a particularized risk of contracting the disease at her prison facility. Consequently, the risk posed by COVID-19 does not create an "extraordinary and compelling reason" for Defendant's release.

**II.    Sentencing Disparity**

A second "extraordinary and compelling" reason offered by Defendant for her compassionate release is the disparity between the sentence she received—224 months—and the sentence her co-defendant and son received—time served.

"[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). In the context of sentencing disparities, sometimes that means the court considers the difference between a defendant's sentence and what sentence the same defendant would be facing today after changes

in the sentencing guidelines. But courts also consider disparities between co-defendants and whether such disparities constitute extraordinary and compelling reasons for compassionate release. *See United States v. Payton*, No. PJM 06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (finding a disparity to be extraordinary and compelling where "despite his more reprehensible conduct, [a co-defendant] is no longer incarcerated, and his sentence reductions have resulted in a striking disparity where a middling supplier of drugs is punished far more severely than the violent 'ringleader' of a drug trafficking organization that dealt in far greater amounts of drugs").

The court sees no unwarranted sentencing disparity here. That is, while Defendant and her son were co-defendants, they are not similarly situated. For example, Defendant was found guilty of six charges, including conspiracy to commit wire fraud and bank fraud, identity theft, aggravated identity theft, access device fraud, interstate transportation of a stolen vehicle, and felon in possession of a firearm or ammunition. Her co-defendant, Deandre Copes, pleaded guilty to only one count—conspiracy to commit wire and bank fraud—and the other four counts against Copes were dismissed pursuant to a plea agreement.[2] *See* ECF Nos. 184, 185. In addition to pleading guilty, Copes also provided testimony for the government at Defendant's trial. *See* ECF No. 212 at 31–32. According to their respective PSRs, Defendant had a total offense level of 33, a criminal history category of III, and was facing a guideline range of 168 to 210 months' imprisonment as to Counts 1, 2, 4, 5, and 6, with a consecutive term of 2 years as to Count 3. [ECF No. 176 ("Defendant PSR").] Defendant was given an adjustment for being a leader, manager, or supervisor of the criminal activity she was convicted of. Defendant PSR ¶ 147. Copes, on the other hand, had a total offense level of 16, a criminal history category of I, and was only facing a

---

[2] Unlike Defendant, Copes was not indicted for being a felon in possession of a firearm.

9

guideline range of 21 to 27 months. [ECF No. 175 ("Copes PSR").] Copes was also given an adjustment for being a minimal participant in any criminal activity. Copes PSR, ¶¶ 98, 116. Ultimately, Copes was given a downward departure and was sentenced below his guideline range. The court finds the disparities in Defendant's and Cope's sentences to be both expected and warranted in light of the disparities in their conduct, convictions, history, and cooperation. This is not an extraordinary and compelling reason warranting compassionate release.

### III.     Factors Under § 3553(a)

Defendant has not adequately demonstrated and extraordinary and compelling reasons for compassionate release, but even if she had, a review of the § 3553(a) factors shows that a reduction in Defendant's sentence is not warranted in this case. Less than two years ago, the court articulated its consideration of the § 3553(a) factors, and the court fully incorporates that discussion here. [ECF No. 212 at 30–36.]

As the court recited at Defendant's sentencing, Defendant's "scheme was responsible for defrauding over $250,000 from over 20 victims" by using "a mobile fraud unit set up in a stolen U-Haul van." *Id.* at 30, 31. She "traveled throughout the east coast for the purpose of committing bank and wire fraud to avoid detection. The illegal conduct also included a scheme to steal at least three vehicles." *Id.* at 31. Defendant involved her son, whom she claimed had learning disabilities, in her scheme. *Id.* The court heard testimony from agents about the extensive evidence of financial crimes on Defendant's computer, which the court found compelling. *Id.* at 32. The court also found significant Defendant's application for a PPP loan. That is, although Defendant otherwise denies sovereignty of the federal government, she applied for a PPP loan using her true identifiers and lied in that application. *Id.* at 34–35. Regarding the Defendant, the court noted the following:

> Ms. Stephens is 41 years old, has had a number of run-ins with the law. She has prior convictions beginning at age 25 for theft by deception, forgery, first degree.

10

> And she is in a criminal history category of III. She has no respect for the rule of law or the rights of others. She willfully engages in fraud and dishonest acts and has learned nothing from her prior convictions or prior incarceration.

[ECF No. 212 at 35.] Both the nature and circumstances of the offense and the history and characteristics of the defendant weigh against compassionate release. *See* 18 U.S.C. § 3553(a)(1).

Additionally, the court concludes that the § 3553(a)(2)(A)–(C) factors weigh against compassionate release. As the court stated at sentencing, Defendant's crimes were serious. Additionally, the circumstances of the offense demonstrate Defendant's willingness to engage in criminal conduct, as well as her disrespect for the law and the general public. At Defendant's sentencing, the court found the need to protect the public to be "a particularly compelling factor in this case." [ECF No. 212 at 35.] Then and now, "[t]he public is battling identity theft and fraudulent schemes like this and what seems to be a losing battle. The Court is very mindful of the need to protect the public against those like Ms. Stephens who will go to great lengths to steal from others." *Id.* at 35–36. The court is concerned that release would neither dissuade Defendant from committing further offenses nor dissuade others from committing similar offenses.

The court next turns to the § 3553(a)(3)–(6) factors. At this point, the court concludes that any reduction in Defendant's sentence would frustrate the goals of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. After careful consideration of the § 3553(a)(3)–(6) factors, the court concludes those factors do not warrant compassionate release.

To the extent Defendant's arguments about the sentencing disparity between herself and her co-defendant are applicable to the court's § 3553(a) discussion, the court has already flatly rejected those arguments. The disparity between their sentences is warranted and presents no reason for compassionate release. Defendant otherwise offers that she has a strong, safe, and

11

secure plan for her release, to include living with her spouse. [ECF No. 188 at 15–16.] And she points the court to the educational and vocational programs she has participated in during her incarceration. *Id.* at 16; *see also* ECF No. 188-1. According to Defendant, "[e]verything considered, during Ms. Stephens['] time in custody she has shown remarkable rehabilitation, participating in significant programming, avoiding any serious disciplinary infractions, and focusing on her faith and her family." [ECF No. 188 at 16.] The court commends Defendant for her good behavior while incarcerated, but these facts have little impact on the court's ultimate determination when considered in conjunction with the weight of the other § 3553(a) factors.[3]

The court concludes compassionate release at this time would disserve the sentencing goals outlined in § 3553(a)—most significantly the need for the sentence imposed to reflect the need for just punishment and the need to protect the public from future crimes of Defendant. Compassionate release would also minimize the effects of Defendant's crimes and the seriousness of the offenses. Although this court has the discretion to modify Defendant's sentence, the 224-month sentence remains appropriate as it reflects the seriousness of the offenses, promotes respect for the law, and provides a just punishment. The sentence affords an adequate deterrence to criminal conduct and protects the public from further crimes of Defendant.

Even if Defendant had adequately demonstrated an "extraordinary and compelling reason" for compassionate release, the court finds a sentence of 224 months remains sufficient but not greater than necessary to comply with the purposes of the § 3553(a) factors.

---

[3] To the extent Defendant's plan for release and her rehabilitative efforts while incarcerated are presented as "extraordinary and compelling" reasons for compassionate release, the court rejects them. *See United States v. Mitchell*, 2024 WL 129761, at *1 (D. Md. Jan. 11, 2024) ("[A]lthough it is encouraging to hear that [defendant] has been participating in rehabilitative programming and employed while incarcerated, and that he has a re-entry plan to live with family, these actions are not in and of themselves "extraordinary." Instead, it appears to the Court that [defendant] has simply done the things that prisoners are expected to do while incarcerated.").

## CONCLUSION

For these reasons, the court **DENIES** Defendant's Motion for Compassionate Release. [ECF No. 188.]

**IT IS SO ORDERED.**

April 8, 2023  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge