IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Quinae Shamyra Stephens,

                              Petitioner,

v.

United States of America,

                              Respondent.

Criminal No. 4:21-cr-651-SAL
Civil No. 4:23-cv-4054-SAL


**OPINION AND ORDER**


This matter is before the court on Petitioner's motion to vacate under 28 U.S.C. § 2255. [ECF No. 193.]  Respondent filed a response in opposition and motion for summary judgment opposing the § 2255 petition.  [ECF No. 220.]  These motions are fully briefed and ripe for this court's review.  For the reasons below, the court **GRANTS** Respondent's motion for summary judgment, ECF No. 220, and **DENIES** Petitioner's motion to vacate, ECF No. 193.

## BACKGROUND

On April 7, 2022, a jury found Defendant guilty of conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); identity theft in violation of 18 U.S.C. § 1028(a)(3) and (b)(2) (Count 2); aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and 2 (Count 3); access device fraud in violation of 18 U.S.C. § 1029(a)(4) and 2 (Count 4); interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312 and 2 (Count 5); and felon in possession of a firearm or ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count 6). [ECF Nos. 98, 152.]  On August 2, 2022, the court sentenced Defendant to

1

a total of 224 months' imprisonment and a five-year term of supervised release.  *See* ECF Nos. 181, 182.

Petitioner did not file a direct appeal.

On August 14, 2023, Petitioner filed a motion pursuant to § 2255, alleging the following grounds for relief (excerpted verbatim):

**GROUND ONE:** Petitioner was denied her right to due process when her attorney failed to inform her of her right to direct appeal.

**Supporting Facts:** Petitioner's attorney failed to inform her of her right to direct appeal within 14 days of imposition of her sentence, an action she would have choose to pursue had she have been properly informed of her right to do so.  This failure caused her not to be able to challenge the sufficiency of her evidence and altered the outcome of her sentence.

**GROUND TWO:** Petitioner's attorney failed to argue reasonable sentencing issues in her case and allow the Court to abuse its discretion.

**Supporting Facts:** A Petitioner has the right to reasonable sentencing despite whether they decide to take thier case to trial or not. Petitioner attorney failed to argue the fact that her sentence reflects a punishment for taking her case to trial, as opposed to signing a plea which would have yielded much less time. This is a violation of the constitutional right to a fair trial and fair sentencing for the Petitioner Ms. Stephens.

**GROUND THREE:** Petitioner's attorney failed to object to the discrimanatory questions asked by the Judge during jury selection.

**Supporting Facts:** The Petitioner Ms. Stephens has, like every defendant, the right to an unbiased impartial jury.  The Petitioner was robbed of this right when her attorney failed to object to certain questions asked during jury selection such as, a jurist thoughts on same sex marriage, Sovern citizen Movement and if any of the jury or thier families were victims of identy theft.    These questions among other constituted discrimination towards the Petitioner who is in a same sex marriage (which had nothing to do with her charges) and biased her jury and denied her an impartial jury as guaranteed by her 6th Amendment Constitutional Rights.

**GROUND FOUR:** Petitioners 922(g)(1) charge violates and infringes on her 2nd and 14th Amendment Constitutional rights.

**Supporting Facts:** The Petitioners 922(g)(1) charge as held in recent court decisions infringes on and violates her 2nd and 14th Amendment rights to keep and bare arms. There her attorney should have argued this fact and if the district court opposed should have immediately direct appealed to attack on review. Her attorney failed to do so.

**GROUND FIVE:** Petitioner Stephens was denied her Constitutional Right to represent herself in Court.

**Supporting Facts:** Petitioner Stephens specifically requested to proceed with her trial pro se and represent herself which is a right afforded to her by the United States Constitution. She was denied that right by her judge who refused to allow her to proceed pro se and her attorneys to be removed from her case.

**GROUND SIX:** Petitioners counsel failed to seek dismissal under the Speedy Trial Act, and failed to explain the time Petitioner would recieve for going to trial.

**Supporting Facts:** Petitioners Counsel failed to seek dismissal when trial proceedings were delayed for various reasons and that's another violation of Petitioner's Constitutional rights. Petitioners Counsel also failed to explain the punishment the Petitioner would receive for taking her case to trial.

**GROUND SEVEN:** Petitioner was dupliciously charged with Identity theft because her aggravated identity theft was invalid under Dubin v. US.

**Supporting Facts:** Counsel failed to argue that Petitioners identity theft was duplicious because her aggravated identity theft charge did not meet the criteria to be considered "aggravated" which would have been addressed had counsel not failed to direct appeal and challenge under Dubin v. United States case. Therefore her aggravated identity theft charge is invalid.

[ECF No. 193 at 4, 5, 6–7, 8, 13, 15, 17 (errors in original).]

3

The government filed a response in opposition and motion for summary judgment. [ECF No. 220.] Petitioner responded. [ECF No. 224.] These motions are ripe and ready for this court's review.

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is appropriate where the pleadings, discovery, and disclosure materials show "that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the court must view the evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Where resolution of a material issue of fact depends on a credibility determination, disposition by summary judgment is not appropriate. *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979).

A federal prisoner in custody may challenge the fact or length of her detention by filing a motion pursuant to 28 U.S.C. § 2255. To receive relief under § 2255, a movant is required to prove by a preponderance of the evidence that his sentence was imposed in violation of the Constitution or laws of the United States; or that the court was without jurisdiction to impose such sentence; or that the sentence exceeded the maximum authorized by law; or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If this showing is made, the court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial to correct the sentence as may appear appropriate." *Id.* § 2255(b). If, on the other hand, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may summarily deny the petition without holding a hearing. *Id.* (providing that a hearing is not

4

required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled
to no relief); Rule 4(b), Rules Governing Section 2255 Proceedings.

A petitioner cannot ordinarily bring a collateral attack based on issues litigated on direct
appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), *cert denied*, 429 U.S.
863 (1976). That said, there is an exception to this rule when a petitioner can show an intervening
change in the law. *Davis v. United States*, 417 U.S. 333, 342 (1974). The burden of showing a
substantial constitutional deprivation is upon the petitioner in a habeas corpus proceeding.
*Johnson v. Zerbst*, 304 U.S. 458, 468–69 (1938). Further, a petitioner must comply with the
Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104–132, 110 Stat. 1214 ("AEDPA"),
which amended § 2255 to provide a one-year limitations period for the filing of § 2255 motions.
*Hosey v. United States*, 518 F. Supp. 2d 732, 734 (D.S.C. 2007).

## II.    Ineffective Assistance of Counsel

Many of Petitioner's grounds for relief are based on assertions that she received ineffective
assistance of counsel. The Sixth Amendment right to counsel includes the right to effective
assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a
violation of the Sixth Amendment's guarantees based on the ineffective assistance of counsel, a
petitioner must show (1) that counsel's performance fell below an objective standard of
reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result
of the proceeding would have been different. *Id.* at 694. A "strong presumption" exists that
counsel's performance fell within a "wide range of reasonable professional assistance." *Id.* at 689.
In addition, the "reasonable probability" contemplated by the second prong of this analysis is "a
probability sufficient to undermine confidence in the outcome" of the trial. *Id.* at 694. When a
court evaluates an attorney's performance under the *Strickland* standard, it must "eliminate the

5

distorting effects of hindsight,  . . . reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time." *Id.* at 690.

## DISCUSSION

The court considers each of Petitioner's grounds for relief below.

## I.    Ground One

### A.    Counsel's Failure to File a Direct Appeal

In Ground One Petitioner asserts that her attorneys failed to notify her of her right to file a direct appeal.  [ECF No. 193 at 4.]  Although the record demonstrates Plaintiff was advised at the sentencing proceeding of her right to file an appeal, it is undisputed that Petitioner never requested counsel file an appeal.  Instead, she alleges she would have chosen to pursue a direct appeal had she been "properly informed of her right to do so." *Id.*  In response, the government argues that the record conclusively shows that Petitioner was advised of her right to appeal, but she indicated no desire to do so.  [ECF No. 220 at 8–10.]

As outlined above, to prove ineffective assistance of counsel, Petitioner must demonstrate both that counsel's performance was deficient and that she was prejudiced as a result. *Strickland*, 466 U.S. at 687–92. An attorney's performance is deficient when it is not reasonable under prevailing professional norms. *Id.* at 688.  In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Supreme Court held that an attorney who disregards a defendant's specific instructions to file a notice of appeal acts in a professionally unreasonable manner.  However, "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the inquiry shifts.  In such circumstances, the court must ask:

> [W]hether counsel in fact consulted with the defendant about an appeal.  We
> employ the term "consult" to convey a specific meaning—advising the defendant
> about the advantages and disadvantages of taking an appeal, and making a
> reasonable effort to discover the defendant's wishes.  If counsel has consulted with

the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . .  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question:  whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega*, 528 U.S. at 479.  Notably, in articulating counsel's duty, the Court stopped short of declaring a bright line rule that counsel must always consult with a defendant about an appeal. *Id.* at 480–81.

    As noted by the Government, throughout the proceedings in Petitioner's case, she maintained a "sovereign citizen" defense and also refused to acknowledge the court's jurisdiction over her.  *See* ECF No. 220 at 3 (collecting instances where Petitioner refused to respond to the court or expressed sovereign citizen ideology).  The record further demonstrates that Petitioner would not talk with appointed trial counsel, but, even after expressing some desire to represent herself, she refused to respond to the court's *Faretta*[1] colloquy and, instead, insisted on repeatedly objecting to the court's jurisdiction and otherwise declining to answer the court's questions.  [ECF No. 92 at 3–17.]  The court was constrained to find that Petitioner had not made a knowing, intelligent, and voluntary waiver of counsel, so trial counsel continued to represent her.  *Id.* at 17.  But Petitioner refused to meet with trial counsel or cooperate with them during trial or sentencing. *See* ECF Nos. 201 at 1–2; 202 at 1.

    Petitioner now claims that counsel failed to inform Petitioner of her right to appeal.  [ECF No. 1 at 4.]  Appointed trial counsel, Kathy Elmore and Mike Meetze, dispute that allegation.  Elmore's recollection of her attempts to consult with Petitioner regarding her right to appeal are detailed:

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

At sentencing, the Court told Ms. Stephens of her right to appeal. Likewise, the undersigned, informed her of her right to appeal at the conclusion of the sentencing hearing. She refused to discuss this matter with me. Following the issuance of the judgment, I sent Ms. Stephens a letter to again inform her of her right to appeal. The letter was not returned, and I was not contacted by Ms. Stephens.

I sent another letter to Ms. Stephens and reiterated her right to appeal as informed by the Court and me on the day of sentencing. I confirmed that I had sent a letter that was not returned. I also confirmed that I came to the jail to meet with her to discuss her right of appeal. At the time of my visit, and as confirmed in my letter, she refused to meet with me and relayed to the correctional officer that she did not acknowledge my representation of her. In this letter, I again requested Ms. Stephens meet with me, call me or respond in writing. In the last letter to Ms. Stephens, I again informed her of her right to appeal. In bold, I informed her that if she did not contact me, I would take that to mean she did not wish to appeal.

[ECF No. 201 at 2.] Meetze further recalled the court advising Petitioner of her right to appeal and trial counsel advising her of that same right by way of a letter. [ECF No. 202 at 2.] Petitioner never responded to the letter, nor was it returned to counsel's office as undeliverable. *Id.*

There is no dispute in the record as to whether Petitioner instructed trial counsel to file an appeal. She did not. Thus, under *Flores-Ortega*, the court must next ask whether counsel consulted with Petitioner—that is, whether they advised her of the advantages and disadvantages of appealing and made reasonable efforts to discover Petitioner's wishes. Here, the record demonstrates counsel *attempted* to consult with Petitioner. Indeed, they made many efforts to do so by letter and in person but to no avail. The court finds counsel's attempts to consult with Petitioner regarding her right to appeal were reasonable and satisfied their duty to provide adequate assistance. *See Strickland*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally

competent assistance."). Indeed, trial counsel went above and beyond in their attempts to consult with Petitioner, and there is no dispute of material fact as to those attempts.

However, even if the court concluded trial counsel did not consult with Petitioner based on Petitioner's own assertion that she was never informed of her right to appeal by counsel, the court would not find their performance deficient in light of the rest of the record. The undisputed evidence, including Petitioner's refusal to cooperate at any point during their representation, could not have led trial counsel to believe that Petitioner wished for them to file an appeal on her behalf. Nor would counsel conclude that a rational defendant with Petitioner's perspective about the judicial process would want an appeal. *See Flores-Ortega*, 528 U.S. at 480 ("Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that particular defendant sufficiently demonstrated to counsel an interest in an appeal.").

Finally, the court must be mindful of Petitioner's specific claim. She claims that trial counsel did not advise her of her right to appeal, and had she been advised of that right, she would have pursued an appeal. But her position is partially contradicted by the record since Petitioner was in fact advised of the right to appeal. Indeed, the court, after announcing Petitioner's sentence, advised Petitioner as follows: "Ms. Stephens, to the extent you have the right to appeal, you have 14 days from the date the judgment is entered to appeal from the sentence the Court has imposed today. If you cannot afford counsel for an appeal, counsel will be appointed for you." [ECF No. 212 at 37.] Again, it is undisputed that Petitioner never expressed any desire to appeal to counsel despite being advised by the court of her right to do so. The court is aware that its own instruction does not absolve counsel of their duty to consult. *See Frazer v. South Carolina*, 430 F.3d 696, 711 (4th Cir. 2005) ("Simply demonstrating that the defendant was actually or constructively aware of

his right to appeal is insufficient to relieve defense counsel of his obligations under *Flores-Ortega*.").  But the record lends further support to the court's conclusion that this ground can be resolved without a hearing.

### B.    Petitioner's Allegation of Incompetence

In her response to the motion for summary judgment, Petitioner asserts trial counsel should have known that a rational defendant would want to appeal, but then she raises an argument that she was not a rational defendant.  She argues she was not competent since she "acted irrationally throughout the proceedings, made decisions that negatively impacted her and clearly demonstrated a lack of understanding of the consequences of her behavior."  [ECF No. 224 at 2.]  She further asserts, "She was subscribed to a belief system that prevented her from meaningfully participating in her defense."  *Id.*  Petitioner does not present any evidence to support her claim of incompetence.  But she offers examples of behavior that she believes should have alerted trial counsel and the court to her alleged incompetence, including the following:

> 1.) her being moved from general population to solitary confinement in the jail where she was held awaiting trial and all the cell extractions that were required to produce her in court 2.) her changing into civilian clothing for trial and then changing back to orange jumpsuit (see Trial Transcript) 3.) Counsel was appointed as stand-by only after defendant had been deemed competent to waive counsel and allowed to proceed pro se but then later found to be unfit to represent herself after a failed Farretta hearing.

*Id.*

This has not been properly raised as a separate § 2255 claim, but the court finds it appropriate to respond to these assertions since they were offered in response to Respondent's motion for summary judgment.  *See id.* at 1–2 ("A reasonable attorney would know that a 'rational defendant' would want to appeal.  Unless of course the attorney knew that her client was not a

'rational defendant' which constitutes another problem entirely.  Was her client 'rational'? Was she even competent?").

In order to be competent, a defendant must have "'sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against [her].'"  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Despite it being evident from the record that Petitioner was *unwilling* to cooperate in her trial, there was no concern about Petitioner's *ability* to cooperate.  Indeed, at Petitioner's sentencing, Elmore described Petitioner as "unwilling to listen" but also "very bright."  [ECF No. 212 at 22.]  Elmore also told the court Petitioner "understands exactly what has been going on. That's clearly reflected in the record time and time again."  *Id.*  The court agrees and finds all of the examples offered by Petitioner (having to be extracted from her cell for court, changing into her orange jumpsuit, having stand-by counsel) are exemplative of Petitioner's refusal to participate in the criminal trial, not her inability to understand that process.

Indeed, trial counsel never raised any issues of competence, and based on Elmore's representations to the court, trial counsel observed Petitioner to be a defendant who, albeit difficult, was fully capable of understanding and assisting in her defense.  Other federal courts have held that "[a] defendant who has it 'within [her] voluntary control to . . . cooperat[e],' is not incompetent merely because [s]he refuses to cooperate."  *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011) (quoting *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003)).  Nor did the court have any reason to sua sponte order a competency evaluation based on its interactions with Petitioner. *See United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) (indicating that even where a defendant "has demonstrated that he can be rude, unreasonable, and myopic in his approach to this

case, that is not the same as incompetence and is not the type of conduct that implies the kind of mental shortcomings required to oblige a district court to *sua sponte* order a competency examination . . . .  Simply being a monumental pain in the neck is not a symptom of incompetency . . .").

Additionally, Petitioner's adherence to sovereign citizen ideology did not necessarily render her incompetent.  *See United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) ("[T]he articulation of unusual legal beliefs is a far cry from incompetence.").  Indeed, other federal courts have found that when a defendant "espouse[s] what have been termed 'sovereign citizen' views" that "doesn't necessarily indicate irrationality of the sort that a court would find calls a party's competence into question."  *United States v. Durdley*, 2023 WL 7547591, at *2 (11th Cir. 2023) (finding a district court did not abuse its discretion in failing to sua sponte order a competency hearing for a defendant who expressed sovereign citizen ideology).

Petitioner has failed to show that either trial counsel or the court had reason to question her competence.  For the reasons above, "the motion and the files and records of the case conclusively shows that the prisoner is entitled to no relief" on Ground One, and the court need not grant a hearing on this issue.  28 U.S.C. § 2255.  Because there is no dispute of *material* fact as to Ground One, the court grants Respondent's motion for summary judgment as to this ground.

## II.     Ground Two

In Ground Two, Petitioner asserts that trial counsel were ineffective for not arguing "reasonable" sentencing issues—namely, that Petitioner's sentence reflects a punishment for taking her case to trial.  [ECF No. 193 at 5.]  Respondent treats this as a challenge to the reasonableness of Petitioner's sentence since Petitioner has not identified any arguments that could have been raised prior to the sentence.  [ECF No. 220 at 10–14.]  Viewing this ground as either a

challenge to counsel's representation or a reasonableness challenge to Petitioner's sentence, Ground Two does not warrant relief.

Initially, Respondent rightly points out that the argument Petitioner now makes could not have been made by trial counsel prior to the court announcing the sentence. *Id.* at 10. In other words, counsel could not have preemptively argued the sentence punished Petitioner for going to trial before counsel knew what sentence would be imposed. Further, in response to this argument, trial counsel both indicate that Petitioner refused to meet with them or the probation officer who prepared her presentence report. [ECF Nos. 201 at 2; 202 at 2.] Additionally, Meetze avers that even if Petitioner discussed this matter with him, he would not have raised it, as he believes it is frivolous. [ECF No. 202 at 2.] The court agrees with that assessment as explained in greater detail below. As a result, the court finds trial counsel were not deficient in their representation. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("'Counsel is not required to engage in the filing of futile motions.'" (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005))).

Nor has Petitioner demonstrated that any prejudice that resulted from trial counsel's failure to raise this claim. It is true that "[a] defendant's right to due process requires that there be no vindictiveness against [her] for having chosen to exercise [her] constitutional right[] [to trial]." *United States v. Susi*, 674 F.3d 278, 286 (4th Cir. 2012). But Petitioner has not identified any evidence to support her position that "her sentence reflects a punishment for taking her case to trial, as opposed to signing a plea which would have yielded much less time." [ECF No. 193 at 5.] That is, the record reflects that Petitioner was sentenced to a total of 224 months' imprisonment—notably, within the statutory limits. And there is no indication in the court's sentencing colloquy that the sentence reflected any level of punishment for Petitioner proceeding to trial. *See* ECF No. 212 at 27–37. The court only referenced the trial in explaining how it came

to know of the depth and breadth of Petitioner's crimes. *Id.* at 30. Ultimately, the court sentenced Petitioner below the guidelines maximum of 234 months, the sentence sought by the Government in its arguments. Petitioner was facing less time if she accepted the terms of the plea offer extended by the Government, but that is neither surprising, nor indicative of any vindictiveness on the part of the court. *See Susi*, 674 F.3d at 288 (explaining that § 3553(a) "does not require courts to sentence similarly individuals who go to trial and those who plead guilty" and further that such individuals "are not similarly situated for sentencing purposes"). For these reasons, Petitioner has failed to demonstrate either prong of *Strickland* with respect to Ground Two.

Turning to the freestanding claim, if Petitioner now attempts to challenge the reasonableness of her sentence, that claim also fails. As argued by Respondent, this type of claim is appropriate for direct appeal and is procedurally defaulted now. *See* ECF No. 220 at 5–6. Moreover, "by its terms, § 2255 does not allow for a court's consideration of every alleged sentencing error." *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015). Many challenges to the reasonableness of a sentence are not cognizable under § 2255. "The Supreme Court has interpreted [§ 2255] such that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Foote*, 784 F.3d at 936 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). Even if this challenge—Petitioner's claim that her sentence is the result of the court punishing her for going to trial—is cognizable, the court has already explained why that claim is meritless in the above prejudice analysis.

Whether considered as a claim of ineffective assistance of counsel or as a freestanding claim to the reasonableness of her sentence, Petitioner's Ground Two fails. The court, therefore, grants Respondent's motion for summary judgment.

### III.    Ground Three

In Ground Three Petitioner argues that trial counsel were ineffective for not objecting to "discriminatory questions" asked during jury selection about the topics of same sex marriage, the sovereign citizen movement, and identity theft. [ECF No. 193 at 6–7.] Respondent, in turn, argues Petitioner cannot show either deficiency or prejudice as to this ground.[2]

During jury selection, the court asked the following questions to the panel of potential jurors:

> Has any member of the jury panel or a close friend or family member of yours been the victims of identity theft?
>
> . . . .
>
> Has any member of the jury panel ever gotten a fraud alert from their financial institution or credit card company?
>
>  . . . .
>
> As to any work or personal electronic device, has any member of the jury panel ever been hacked, had the device infected with a virus or any type of malware including ransomeware.
>
> . . . .
>
> Of those who have heard of the dark web, has anyone formed an opinion about whether using the dark web is legal or illegal?  Has anyone formed an opinion about whether using it is legal or illegal?
>
> All right.  Is any member of the jury panel religiously or morally opposed to same sex marriages?
>
> . . . .
>
> Is any member of the jury panel familiar with the sovereign citizen movement?

---

[2] Respondent also argues the freestanding claim that Petitioner's jury was biased is procedurally defaulted.  *See* ECF No. 220 at 5–6.  The court agrees but sees this challenge as an ineffective assistance of counsel claim, which is proper in a § 2255 action.

[ECF No. 214 at 23, 25, 28, 29, 44.]  After each of those questions, the court called potential jurors who answered in the affirmative to sidebar individually about whether they could be fair despite their knowledge or feelings about those issues.  In their affidavits, trial counsel reaffirm their beliefs that these voir dire questions were appropriate given the facts of Petitioner's case.  [ECF Nos. 201 at 2; 202 at 3.]  In fact, Meetze offers, "I believe it would have been ineffective not to request that Judge Lydon asks these questions during voir dire."  [ECF No. 202 at 3.]

First looking at counsel's performance, *Strickland* requires that the court begin with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Here, trial counsel agree that they wanted those topical voir dire questions to be asked by the court.  The court finds their trial strategy reasonable, and Petitioner has not pointed to any evidence to the contrary.  *See id.* at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

Next looking at any prejudice that resulted, Petitioner argues those questions biased her jury, but her position is entirely speculative.  The record demonstrates that potential jurors answered that they could be fair despite their knowledge or beliefs about same sex marriage and the sovereign citizen movement, and, likewise, they said they could be fair despite experiences with identity theft and fraud alerts.  *See* ECF No. 214 at 23–44.  There is no basis for Petitioner's claims of bias.  This ground is wholly without merit.  Accordingly, the court grants Respondent's motion for summary judgment with respect to Ground Three.

IV.     **Ground Four**

Petitioner next argues that her conviction under § 922(g)(1) "infringes on and violates her 2nd and 14th Amendment rights to keep and bare arms." [ECF No. 193 at 8 (error in original).] In her motion, Petitioner only references "recent court decisions." *Id.* Petitioner also asserts trial counsel were ineffective for failing to make this argument.

Respondent initially argues this claim is procedurally barred. [ECF No. 220 at 5–6.] Then, Respondent argues there are no "decisions from the Fourth Circuit that could possibly serve as the basis for the facial challenge [Petitioner] suggests." [ECF No. 220 at 16.] Additionally, Respondent identifies multiple cases where this court has rejected challenges to the constitutionality of § 922(g)(1). *Id.* Respondent further argues that trial counsel could not be deficient for failing to predict future changes in the law. *Id.* at 17.

In her response to the motion for summary judgment, Petitioner repeatedly cites "BRUEN" and other cases decided after *Bruen*,[3] as the apparent basis for her challenge to § 922(g)(1). [ECF No. 224 at 3–4.]

Initially, the court agrees that this claim is procedurally barred since it was not raised in a direct appeal. Additionally, it lacks merit as discussed below.

Although Petitioner relies upon *Bruen*, that case does not stand for the proposition that a conviction under § 922(g)(1) violates her rights under the Second Amendment. Indeed, since the parties briefed this issue, the Fourth Circuit has declared "Section 922(g)(1) is facially constitutional because it 'has a plainly legitimate sweep' and may constitutionally be applied in at least *some* 'set of circumstances.'" *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). This

---

[3] *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

means that neither the law in effect at the time of Petitioner's conviction, nor the law now, supports her claim that her § 922(g)(1) conviction violates the constitution. Additionally, trial counsel could not have been ineffective for failing to make that argument at the time of Petitioner's trial. *See Sharpe v. Bell*, *supra*. The court, thus, rejects Petitioner's Ground Four and grants Respondent's motion for summary judgment as to the same.

## V.     Ground Five

Petitioner's Ground Five concerns Petitioner's right to represent herself at trial. She claims that she requested to proceed pro se but was denied that right. [ECF No. 193 at 13.] In response, Respondent asserts this claim is procedurally defaulted as it was not raised in a direct appeal. [ECF No. 220 at 5–6.] Additionally, Respondent argues Petitioner's constitutional right to self-representation was not violated since Petitioner refused to answer the court's questions during the *Faretta* colloquy. [ECF No. 220 at 17–19.]

As articulated by the Fourth Circuit, "[t]he Sixth Amendment guarantees to a criminal defendant the right to the assistance of counsel before [she] can be convicted and punished by a term of imprisonment. . . . Nonetheless, it is equally clear that the Sixth Amendment also protects a defendant's affirmative right to self-representation." *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015) (internal citations omitted). In this circuit, "representation by counsel is the 'default position . . . .'" *Id.* at 649. Thus, the Fourth Circuit has instructed

> lower courts to "indulge in every reasonable presumption" against the relinquishment of the right to counsel. *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). Accordingly, an effective assertion of the right to self-representation (and thus a waiver of the right to counsel) requires that a defendant "knowingly and intelligently" forgo the benefits of counsel after being made aware of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835.

*Id.*

18

Initially, the court agrees with Respondent's argument that this ground is procedurally barred now as it should have been raised in a direct appeal.

Further, the record clearly shows that, after learning of Petitioner's potential desire to represent herself, the court advised Petitioner of her right to counsel and also her right to waive counsel. [ECF No. 92 at 2–4.] The court then attempted to question Petitioner to determine if her waiver of counsel was knowing and voluntary. *Id.* at 4–17. Petitioner repeatedly refused to answer the court's questions, instead making objections to the court's jurisdiction and stating, "I'm not here to answer any questions." *Id.* Based on Petitioner's refusal to constructively engage in the courtroom, the court was constrained to find appointed counsel should continue to represent Petitioner. *Id.* at 17 ("[T]he Court . . . would just note for the record that I asked many questions and—out of great respect for any desire Ms. Stephens might have to represent herself, but she has not expressed that desire and she certainly has not in any way indicated that she waives her constitutional right to counsel; so counsel will remain in this case."). The court's conclusion was entirely consistent with the Fourth Circuit's direction regarding the waiver of counsel and the presumption against that waiver. Accordingly, Petitioner fails to demonstrate that her constitutional rights were violated or that she is entitled to relief on her Ground Five. The court grants Respondent's motion for summary judgment as to this ground.

## VI.    Ground Six

In Ground Six, Petitioner alleges ineffective assistance of counsel based on trial counsel's failure to seek dismissal of Petitioner's charges under the Speedy Trial Act. [ECF No. 193 at 15.]

She further alleges trial counsel failed to "explain the time Petitioner would receive for going to trial." *Id.* Respondent argues this ground lacks merit.[4] [ECF No. 220 at 19–22.]

"The purpose of the Speedy Trial Act is two-fold: to protect the defendant from excessive pre-trial delay and incarceration by the government and to protect the public's interest in the speedy resolution of justice." *United States v. Vallin-Cernas*, CR. No. 3:06-797-JFA, 2008 WL 11417250, at *3 (D.S.C. Feb. 5, 2008) (citing *United States v. Larson*, 417 F.3d 741, 746 (7th Cir. 2005)). The Speedy Trial Act requires that an information or indictment be filed within thirty days of an individual's arrest or service with a summons and, further, that a criminal trial commence within seventy days of the latest of the filing of the indictment, the information, or appearance. 18 U.S.C. § 3161(b) & (c)(1). There are periods of delay, defined within the statute, that may be excluded from the seventy-day period—for instance, for pretrial motions or when the ends of justice served by continuing the case outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h). When calculating the seventy-day period, "the day of the event that triggers the [Speedy Trial Act] clock, i.e., the filing or opening of the indictment or the initial appearance, is not included in the calculation; the clock begins to run the following day." *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996).

Petitioner offers little factual basis for this claim. She asserts trial counsel "failed to seek dismissal when trial proceedings were delayed for various reasons and that's another violation of Petitioner's constitutional rights." [ECF No. 193 at 15.] She further claims, "Counsel . . . failed to explain the punishment the Petitioner would receive for taking her case to trial." *Id.* Both trial counsel confirm that they did not seek a dismissal based on Petitioner's Speedy Trial rights. [ECF

---

[4] Respondent also asserts the freestanding claim is procedurally barred. [ECF No. 220 at 5–6.] The court agrees but will analyze the claim as one for ineffective assistance of counsel since that is how it has been raised in the § 2255 motion.

Nos. 201 at 3; 202 at 3.] Elmore indicates there was no basis to do so. [ECF No. 201 at 3.] Further, Elmore indicates that Petitioner refused to meet with her during the course of her representation, but Petitioner was informed via mail of the Government's plea offer and the possible outcome if she was convicted at trial. *Id.* Meetze recalls trial counsel sent Petitioner "letters which explained the government's plea offer and that Ms. Stephens was looking at well over a decade in prison if she were to be convicted after a trial." [ECF No. 202 at 3.] Additionally, the record confirms that the Government put its plea offer on the record and the potential penalties Petitioner faced if she went to trial instead. [ECF No. 92 at 20–21.]

These facts do not establish deficient performance by trial counsel. That is, as explained in more detail below, there was no basis for moving for dismissal under the Speedy Trial Act. Additionally, despite Petitioner's refusal to meet with trial counsel, they sent her letters advising her of the ramifications of going to trial and not accepting the Government's plea deal. And Petitioner was also given that information in open court. There is no basis for finding trial counsel's representation was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690 ("[T]he court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.").

Additionally, as argued by the Government, there was no violation of the thirty-day clock since Defendant was arrested on September 7, 2021, had her initial appearance the following day, and was indicted on September 28, 2021. [ECF Nos. 7, 13, 17, 19.] Likewise, the Government's motion details why there was no violation of the seventy-day clock. [ECF No. 220 at 21–22.] That clock began to run on September 29, 2021, the day after Petitioner's indictment, and continued until November 30, 2021, Petitioner's first pretrial. [ECF Nos. 19, 51, 52.] After that,

all remaining time was excluded by the court until Petitioner's trial on April 5, 2022. [ECF Nos. 52 (continuing trial to February 2022 term of court based on ends of justice); 95; 96 (continuing trial to April 2022 term based on ends of justice and co-defendant's motion).] Within the excluded time, the court held a hearing to determine if Petitioner could represent herself and another hearing on a motion to suppress filed by trial counsel. *See* ECF Nos. 91, 133. Also, the indictment against Petitioner was superseded. ECF No. 98. All of that to say, because only sixty days lapsed between the indictment and trial when taking into account the time excluded by continuances and motions, the Speedy Trial Act was not violated in Petitioner's case. Consequently, even if Petitioner successfully showed deficient performance by counsel, no prejudice resulted.

There is no issue of material fact as to Petitioner's Ground Six. Accordingly, the court grants Respondent's motion for summary judgment as to the same.

## VII.    Ground Seven

In her final ground for § 2255 relief, Petitioner asserts she was "dupliciously charged with Identity theft because her aggravated identity theft was invalid under Dubin v." [ECF No. 193 at 17 (errors and cut off in original).] She goes on to explain,

> Counsel failed to argue that Petitioner's identity theft was duplicious because her aggravated identity theft charge did not meet the criteria to be considered "aggravated" which would have been addressed had counsel not failed to direct appeal and challenge under the Dubin v. United States case. Therefore her aggravated identity theft charge is invalid.

*Id.* (errors in original). Respondent argues Petitioner's reliance on *Dubin* is misplaced since that decision was not issued until June 8, 2023, well after Petitioner's trial. *See Dubin v. United States*, 599 U.S. 110 (2023). But, even if it had been decided prior to Petitioner's trial, *Dubin* would afford no relief. [ECF No. 220 at 22–24.]

22

Trial counsel both confirm that they did not make any challenge in Petitioner's case based on *Dubin*. [ECF Nos. 201 at 3; 202 at 3.] They also both note that case was not decided at the time of Petitioner's trial and sentencing since it did not come out until June 8, 2023. [ECF Nos. 201 at 3; 202 at 3.] "[C]ounsel 'does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent' or 'by failing to anticipate changes in the law, or to argue for an extension of precedent.'" *United States v. Palacios*, 982 F.3d 920, 924 (4th Cir. 2020) (quoting *United States v. Morris*, 917 F.3d 818, 824 (4th Cir. 2019)). Thus, counsel were not deficient in Petitioner's case for failing to make a challenge based on *Dubin*.

The Government also argues that there could be no prejudice here because *Dubin* does not afford the relief Petitioner claims. [ECF No. 220 at 22–24.] The court agrees. Briefly, *Dubin* concerned a defendant who overbilled Medicaid for psychological testing, but the operative question for the Supreme Court was whether "in defrauding Medicaid, he also committed '[a]ggravated identity theft,' 18 U.S.C. § 1028A(a)(1)[.]" *Dubin*, 599 U.S. at 113. The Court found he had not based on the following reasoning:

> § 1028A(a)(1) is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method. Here, the crux of petitioner's overbilling was inflating the value of services actually provided, while the patient's means of identification was an ancillary part of the Medicaid billing process.

*Id.* at 114.

Unlike in *Dubin*, in Petitioner's case, her misuse of others' identification was the "crux" of her criminal conduct, in which she was the leader of a "scheme . . . responsible for defrauding over $250,000 from over 20 victims" using "a mobile fraud unit set up in a stolen U-Haul van." [ECF No. 212 at 30, 31.] The holding of *Dubin* does not offer any relief to Petitioner, nor has Petitioner

offered any further argument to demonstrate how her aggravated identity theft charge was duplicitous. Thus, no prejudice resulted from trial counsel's failure to make any such argument.

For all of these reasons, Respondent's motion for summary judgment is granted as to Ground Seven.

## VIII.  Evidentiary Hearing

For the reasons set forth above, the government is entitled to summary judgment on the claims raised in Petitioner's § 2255 motion. This conclusion is evident as a matter of law from the motion and the files and records of the case. Accordingly, the court will summarily deny the petition without holding a hearing. 18 U.S.C. § 2255(b) (providing that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief); Rule 4(b), Rules Governing Section 2255 Proceedings.

## CONCLUSION

Having found that Petitioner has failed to demonstrate any material issue of fact as to the claims raised in her § 2255 motion, Respondent's motion for summary judgment, ECF No. 220, is **GRANTED**, and Petitioner's motion to vacate under 28 U.S.C. § 2255, ECF No. 193, is **DENIED**. It is further ordered that a certificate of appealability is denied because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[5]

**IT IS SO ORDERED.**

July 1, 2024                                      Sherri A. Lydon
Columbia, South Carolina                          United States District Judge

---

[5] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this matter, the court finds that Petitioner has failed to make "a substantial showing of the denial of a constitutional right."